**Affirmed in Part and Reversed in Part and Remanded and Memorandum Opinion filed April 14, 2026**



In The

# Fifteenth Court of Appeals

## NO. 15-25-00212-CV

**COREY MORRELL, Appellant**

V.

**TEXAS COMMISSION ON ENVIRONMENTAL QUALITY, Appellee**

**On Appeal from the 455th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-25-003444**

## MEMORANDUM OPINION

Over one year after the Texas Commission on Environmental Quality (TCEQ) entered an enforcement order against Corey Morell regarding scrap tires on his property, he filed the underlying suit. Morrell brought multiple claims against the TCEQ challenging the enforcement order, seeking a writ of mandamus to compel the TCEQ to disclose information under the Texas Public Information Act, and challenging a TCEQ rule. The TCEQ filed a plea to the jurisdiction which the trial

court granted, dismissing all of Morrell's claims. We conclude the trial court erred by granting the TCEQ's plea to the jurisdiction regarding Morrell's suit for a writ of mandamus under the Public Information Act. We further conclude the trial court did not err by dismissing Morrell's remaining claims with prejudice. We therefore reverse in part and remand for further proceedings.

## BACKGROUND

In 2022, The Texas Commission on Environmental Quality (TCEQ) brought an enforcement action against Corey Morrell for owning and operating an unauthorized municipal solid waste disposal site after an investigator documented tires that had been disposed on Morrell's property. Morrell requested a contested case hearing on the allegations against him and represented himself at a hearing before the State Office of Administrative Hearings. The TCEQ ultimately entered an enforcement order (the "Order"), concluding that the tires on Morrell's property were scrap tires and constituted municipal solid waste. *See* Tex. Health & Safety Code §§ 361.003(20), 361.112(l); 30 Tex. Admin. Code § 330.3(90), (142). The Order stated that in 2020, there were approximately 1,852 scrap tires "with no apparent use" in three disorderly piles on Morrell's property and that Morrell violated 30 Texas Administrative Code section 330.15 (a) and (c) by "causing, suffering, allowing, or permitting the collection, storage, transportation, processing, or disposal of municipal solid waste on his property without [TCEQ] authorization." The TCEQ imposed a $6,750 administrative penalty and ordered Morrell to submit documentation demonstrating that he had properly disposed of all the scrap tires.

Morrell filed a motion for rehearing which was overruled by operation of law on March 25, 2024. *See* 30 Tex. Admin. Code § 80.272(e)(1). Morrell failed to file a petition initiating judicial review within 30 days of the Order becoming final. *See* Tex. Gov't Code § 2001.176(a).

2

Over a year later, Morrell filed a request with the TCEQ under the Public Information Act (PIA) requesting multiple documents related to the Order, including internal correspondence related to issuance and service of the Order, documents related to the current status of the case, and certain communications referencing the docket number or Morrell's name. On May 13, 2025, the TCEQ responded to Morrell's request, informing him that some responsive documents had been located, but the TCEQ had also requested an opinion from the Attorney General regarding whether other requested information could be excluded from public disclosure. *See* Tex. Gov't Code § 552.301. The same day of the Commission's response, Morrell filed the underlying suit.

In his most recent pleadings, Morrell claimed the Order was void and that the Chairwoman and Executive Director of TCEQ had acted ultra vires in issuing the Order. Specifically, he claimed that the TCEQ lacked authority to regulate his non-commercial private land and had no jurisdiction because the material on his land was not discarded municipal solid waste. He also sought declarations that 30 Texas Administrative Code section 328.60, a regulation requiring registration for a scrap tire storage site, may not be enforced without "individualized assessment" of tire condition and that the regulation "is unlawful and exceeds [TCEQ's] legislative mandate." Finally Morrell sought a writ of mandamus under the PIA, claiming that he submitted multiple requests to the TCEQ seeking access to public records related to the enforcement action, but the TCEQ "failed to provide a comprehensive set of responsive, non-privileged public information as required by law." Morrell specifically complained of the TCEQ's failure to produce information regarding how TCEQ became aware of the tires on his property, the identity of the informant who notified TCEQ of the tires, records of communications with the informant, and correspondence related to TCEQ's initial involvement.

The TCEQ filed a plea to the jurisdiction, claiming that the trial court lacked jurisdiction over all of Morrell's claims. It alleged the trial court lacked jurisdiction to consider Morrell's collateral attacks on the Order because he had failed to timely file a petition for judicial review. Additionally, the TCEQ argued that there was no merit to Morrell's claims that the Order was void because the TCEQ was without authority to issue it or because it was issued ultra vires. The TCEQ further argued the Morrell lacked standing to challenge 30 Texas Administrative Code section 328.60 because it had not been applied to him, nor was there any threat that it would be applied to him. Finally, the TCEQ asserted that sovereign immunity barred Morrell's PIA claims because he did not establish that the TCEQ refused to supply public information.

After the TCEQ filed its plea to the jurisdiction, it notified the trial court that the Attorney General had issued an open records letter ruling, affirming that the TCEQ properly withheld information under the pending-litigation exception to the PIA. *See* Tex. Gov't Code § 552.103(a), (c). The trial court granted the TCEQ's plea to the jurisdiction and dismissed Morrell's case in its entirety with prejudice.

## ANALYSIS

In this Court Morrell argues that (1) his suit was not a belated petition challenging the TCEQ Order, but was a permissible collateral attack because the Order was void and the TCEQ officials acted ultra vires in entering it; (2) he had standing to challenge TCEQ rules; (3) the trial court had jurisdiction over his PIA mandamus claim; and (4) the trial court erred by dismissing his claims with prejudice.

### A. Morrell's Attack on the TCEQ Order Is Barred Because It Is an Untimely Collateral Attack.

A party who has been aggrieved by a final decision in a contested case "is

4

entitled to judicial review . . . ." Tex. Gov't Code § 2001.171. The Government Code provides that a petition for judicial review must be filed "not later than the 30th day after the date the decision or order that is the subject of complaint is final and appealable." *Id.* § 2001.176(a). If a petition for judicial review is not timely filed, the administrative order becomes final and unappealable which a "trial court generally does not have jurisdiction to review . . . ." *Patino v. Tex. Dep't of Ins.-Div. of Workers' Comp.*, 631 S.W.3d 163, 170 (Tex. App.—Houston [14th Dist.] 2020, no pet.). However, an order is not immune from a collateral attack if the order involves fundamental error or the agency has acted beyond its statutory authority. *Id*. We review a ruling on a plea to the jurisdiction de novo. *Id.* at 169 (citing *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007)).

Morrell first claims that even if the Order is final, the controversy is not moot or time-barred because "a probability of enforcement litigation exists." However, whether an order has become final and unappealable is a separate issue from whether an agency may enforce an order through litigation. The Water Code provides that if within 30 days of a Commission order becoming final a party has not filed a petition for judicial review, the party "*waives the right to judicial review*, and the [C]ommission or the executive director may refer the matter to the attorney general for enforcement." Tex. Water Code § 7.066 (emphasis added); *see id.* § 7.061. Morrell has waived his right to judicial review regardless of the probability of the Commission later referring the matter for enforcement.

### 1. The Order Is Not Void.

Morrell next claims that his suit is not a petition for judicial review. Rather, he asserts that he brings a permissible collateral attack because the Order is void because the TCEQ exceeded its statutory authority by regulating his non-commercial, private land use. He claims that the TCEQ "exceeded its enabling

5

statutes and applied rules intended for registered commercial storage facilities to a private, non-commercial beneficial-use project." *See* Tex. Health & Safety Code § 361.112(a); 30 Tex. Admin. Code § 328.60(a).

The Solid Waste Disposal Act sets out the Commission's jurisdiction, providing that the Commission is "responsible … for the management of municipal solid waste . . . ." Tex. Health & Safety Code § 361.011(a). The Commission shall accomplish these purposes "by controlling *all aspects* of the management of municipal solid waste . . . ." *Id*. § 361.011(b) (emphasis added). The Legislature gave the Commission explicit authority to enforce those provisions. Tex. Water Code §§ 5.013(a)(11); 7.002. Under the Texas Health and Safety Code, "[a] person may not store more than 500 used or scrap tires *for any period* on any publicly or *privately owned* property unless the person registers the storage site with the commission." Tex. Health & Safety Code § 361.112(a) (emphasis added). Nothing in any of these provisions, limits the Commission from regulating waste, regardless of its use, on non-commercial private land. We disagree with Morrell that the Order was void because it was outside the TCEQ's statutory authority.

## 2. The TCEQ Officials Did Not Act Ultra Vires by Entering the Order.

Morrel next claims that TCEQ officials acted ultra vires in entering the order, as they had no jurisdiction to invoke municipal solid waste rules because the tires on his property were never shown to be municipal solid waste. "An *ultra vires* claim based on actions taken 'without legal authority' has two fundamental components: (1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *Hall v. McRaven*, 508 S.W.3d 232, 239 (Tex. 2017) (quoting *Hous. Belt & Terminal Ry. Co. v. City of Hous.*, 487 S.W.3d 154, 158 (Tex. 2016)). Accordingly, we must decide if TCEQ officials were deprived of all discretion to determine whether the tires on Morrell's property were municipal

solid waste. *See id.*

Under the Solid Waste Disposal Act, "'Municipal solid waste' means solid waste resulting from or incidental to municipal, community, commercial, institutional, or recreational activities, and includes garbage, rubbish, ashes, street cleanings, dead animals, abandoned automobiles, and other solid waste other than industrial solid waste." Tex. Health & Safety Code § 361.003(20). Whether materials fall under a definition of waste is an issue committed to the TCEQ's discretion. *See Slay v. Tex. Comm'n on Env't Quality*, 351 S.W.3d 532, 549–50 (Tex. App.—Austin 2011, pet. denied) (explaining that the court could not substitute its judgement for that of the TCEQ's on matters "committed to agency discretion" and concluding that the "TCEQ's determination that the materials were waste is within the bounds of reasonableness").

Morrell claims that scrap tires do not come under the definition of municipal solid waste because they are governed separately under 30 Texas Administrative Code Chapter 328, Subchapter F, which addresses the management of used or scrap tires. Morrell asserts that "Those provisions confirm that tires are treated as a distinct, recyclable material—not as municipal solid waste." But the language of the Administrative Code belies this assertion, explicitly recognizing that scrap tires may be classified as municipal solid waste: "This subchapter applies to persons that are involved in the … storage, utilization, and disposal of used or scrap tires or tire pieces that are classified as *municipal solid waste*…." 30 Tex. Admin. Code § 328.52(b) (emphasis added). Accordingly, nothing in the Administrative Code deprives TCEQ officials of discretion to determine that the tires on Morrell's property were municipal solid waste.

## B. Morrell Lacks Standing to Challenge 30 Texas Administrative Code Section 328.60.

Morrell sought declaratory relief under Texas Government Code section 2001.038, seeking a declaration that the TCEQ's application of 30 Texas Administrative Code section 328.60 to private individuals in certain situations is unlawful and exceeds the TCEQ's statutory mandate.[1] Section 2001.038 permits a declaratory judgment action against a state agency regarding the validity of a rule: "The validity or applicability of a rule … may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code § 2001.038(a).

The rule challenged by Morrell provides that "[p]ersons who store more than 500 used or scrap tires … on the ground or 2,000 used or scrap tires … in enclosed and lockable containers at a facility shall be required to obtain a scrap tire storage site registration for that facility…." 30 Tex. Admin. Code § 328.60. Morrell sought a declaration that section 328.60 requires an objective, qualified and independent determination of tire condition, and that its application to private individuals storing tires for personal use was unlawful.

The TCEQ asserted that Morrell lacked standing under section 2001.038 because he failed to allege that the rule or its threatened application interfered with or impaired his legal rights or privileges. "For standing, a plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, not hypothetical." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008) (footnotes omitted). Lack of standing deprives a trial court of jurisdiction. *Id.* at 304. "Standing, like other issues implicating a court's subject

---

[1] Morrell also sought a declaration that the TCEQ's application of Texas Health and Safety Code section 361.112 was unlawful. However, he does not challenge the trial court's dismissal of that claim in this court.

matter jurisdiction, is a question of law that we review de novo." *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018).

Like other actions, a section 2001.038(a) action "requires that the party bringing the suit have standing, that there be a live controversy between the parties, and that the case be justiciable." *Kensington Title-Nevada, LLC v. Tex. Dep't of State Health Servs.*, 710 S.W.3d 225, 229 (Tex. 2025). The Supreme Court in that case addressed whether a plaintiff had standing under section 2001.038 to challenge the applicability of a rule. The Court concluded that the plaintiff demonstrated standing because the "petition includes factual allegations that, if proven, would show interference or impairment." *Id.* The court further recognized that a threatened administrative penalty was a "prototypical form of injury in fact." *Id.* (quoting *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 251 (Tex. 2023)). The Court noted that a declaration regarding the applicability of the rule to the plaintiff "would redress the Department's *threat to fine it* for violating the rule." *Id.* (emphasis added); *see Tex. Bd. of Chiropractic Examiners v. Texas Med. Ass'n*, 616 S.W.3d 558, 567 (Tex. 2021) (concluding that an association had standing under section 2001.038(a) where the "alleged injury is directly traceable to the Board's rule-making and would be redressed here by judicial invalidation of the challenged rules").

Morrell's petition does not allege any injury or threat of injury that would be redressed by a declaration regarding 30 Tex. Admin. Code section 328.60. Rather, he asserted that he sought "to clarify the rule's proper scope" and claimed that the declaration he sought would ensure "the rule's future application aligns with its statutory basis and avoids ultra vires enforcement." In this Court, Morrell claims he had standing to challenge 30 Texas Administrative Code section 328.60 based on

the TCEQ's attempted enforcement of the Order.[2] But as the TCEQ pointed out in its plea to the jurisdiction, the TCEQ Order was not based on section 328.60. Rather, the Order stated that Morrell violated 30 Texas Administrative Code section 330.15 (a) and (c), "by causing, suffering, allowing, or permitting the collection, storage, transportation, processing, or disposal of municipal solid waste on his property without Commission authorization." Because the Order does not even mention section 328.60, any allegation regarding section 328.60, even if proven, will not have any impact on the Order's enforceability. We conclude that Morrell lacked standing under section 2001.038(a) to challenge 30 Texas Administrative Code section 328.60. We overrule Morrell's third issue.

## C. The Trial Court Erred in Dismissing Morrell's Claim Under the PIA.

The PIA, found in Chapter 552 of the Texas Government Code, guarantees access to public information, subject to certain exceptions. *Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 114 (Tex. 2011). "The Legislature has authorized PIA requestors … to 'file suit for a *writ of mandamus* compelling a governmental body to make information available.'" *Paxton v. Am. Oversight*, 716 S.W.3d 535, 540 (Tex. 2025) (quoting Tex. Gov't Code § 552.321). Morrell sought such a writ of mandamus to compel the TCEQ's production of non-privileged information under the PIA. Morrell specifically claimed that he submitted written requests to the TCEQ seeking access to public records, TCEQ "released a limited batch of documents," but "failed to provide a comprehensive set of responsive, non-privileged public information as required by law."

Immunity is waived under the PIA under certain circumstances. *City of*

---

[2] In this Court, Morrell also claims that his declaratory judgment action under section 2001.038 is ripe. But the TCEQ did not seek dismissal of his claim on the ground that it was not ripe, so we do not address that issue.

*Galveston v. CDM Smith, Inc.*, 470 S.W.3d 558, 570 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). The PIA provides:

> A requestor or the attorney general may file suit for a writ of mandamus compelling a governmental body to make information available for public inspection if the governmental body [A] refuses to request an attorney general's decision . . . or [B] refuses to supply [1] public information or [2] information that the attorney general has determined is public information that is not excepted from disclosure . . . .

Tex. Gov't Code § 552.321(a). This statutory language in section 552.321(a) imposes prerequisites to suit, specifically that "a requestor may file suit *only* upon showing that the governmental body 'refuses to request an attorney general's decision[,]' or 'refuses to supply public information or information that the attorney general has determined is public information[.]'" *Johnson v. Bastrop Cent. Appraisal Dist.*, 657 S.W.3d 686, 693 (Tex. App.—El Paso 2022, pet. denied) (alterations in original) (quoting Tex. Gov't Code § 552.321(a)); *Uvalde Consol. Indep. Sch. Dist. v. Tex. Trib.*, 720 S.W.3d 466, 474 (Tex. App.—San Antonio 2025, no pet.) (explaining that the "jurisdictional question" is whether the governmental entity has "refused to provide either: (1) Public information; or (2) Information that the Attorney General has determined is public and not excepted from disclosure."). "[A]ll statutory prerequisites are jurisdictional requirements as to governmental entities and are properly asserted in a plea to the jurisdiction." *Johnson*, 657 S.W.3d at 693 (citing *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 511 (Tex. 2012)).

The parties do not dispute that the TCEQ requested an Attorney General opinion and that the Attorney General determined that the information requested by Morrell was excepted from disclosure. Accordingly, we focus on the issue of whether the TCEQ refused to provide public information.

11

The TCEQ claims that Morrell did not establish that it "refused" to supply public information because it was not unwilling to provide information that was public. The TCEQ points to its actions reviewing its records and segregating the privileged from non-privileged documents to demonstrate its willingness to provide public information. Consistent with the holdings of other courts of appeals, we decline to adopt the TCEQ's limited definition of "refuse."

In *Kallinen v. City of Houston*, the Texas Supreme Court held that under the language of section 552.321(a), a requestor properly brought a mandamus action on the grounds that a governmental body refused to supply public information after the governmental entity had produced some documents, withheld others, and requested an Attorney General ruling. 462 S.W.3d 25, 27 (Tex. 2015) (per curiam). Applying *Kallinen*, multiple courts of appeals have rejected governmental entities' claim that withholding requested documents even when based on an Attorney General opinion is not a "refusal" to supply public information. *Uvalde*, 720 S.W.3d at 476 (holding that governmental entities who had "not complied with most of the information requests at issue … 'refused' to supply information as contemplated by section 552.321."); *Muir v. Univ. of Tex. at Austin*, No. 03-22-00196-CV, 2023 WL 4110843, at *5 (Tex. App.—Austin June 22, 2023, no pet.) (mem. op.) ("[W]e reject the University's assertion that Muir's allegations—that the University withheld documents as being excepted from disclosure—are insufficient to demonstrate that it is 'refus[ing] to supply public information.'" (alteration in original)); *City of Olmos Park v. Grable*, No. 08-24-00388-CV, 2025 WL 3619332, at *2, *4 (Tex. App.—El Paso Dec. 12, 2025, no pet.) (mem. op.) (rejecting the City's assertion that it withheld information "not because it was unwilling to disclose it, but because it was complying with the Attorney General decision which ruled that the information was excepted from disclosure").

As the San Antonio Court of Appeals explained, a narrow construction of "refusal" was foreclosed by *Kallinen* because such a construction "would limit mandamus relief to situations where a governmental body merely fails to request an open records decision or fails to comply with one." *Uvalde*, 720 S.W.3d at 475 (citing *Kallinen*, 462 S.W.3d at 28). But "section 552.321 allows a district court '*to consider whether requested information is subject to disclosure*, irrespective of whether the Attorney General has issued a ruling addressing that question.'" *Id.* (quoting *Harris Cnty. Appraisal Dist. v. Integrity Title Co., LLC*, 483 S.W.3d 62, 66 (Tex. App.—Houston [1st Dist.] 2015, pet. denied)). We decline to adopt the TCEQ's definition of "refusal" and conclude that by withholding information requested by Morrell, the TCEQ "refused" to supply information under section 552.321. *See id.* at 476 ("It is undisputed that the School District and County have not complied with most of the information requests at issue. We conclude they have 'refused' to supply information as contemplated by section 552.321.").

We next decide whether the information the TCEQ refused to supply was public. Public information is defined in the PIA as "information that is written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business … by a governmental body …." Tex. Gov't Code § 552.002(a)(1). But public information is exempt from disclosure if it is "confidential by law, either constitutional, statutory, or by judicial decision." *Id*. § 552.101. The TCEQ does not contend that the information requested by Morrell was not public information as defined by the PIA. Rather, TCEQ asserts that the information is excepted from disclosure. We consider whether an exception applies.

"'Whether information is subject to the PIA and whether an exception to disclosure applies are questions of law.'" *Tex. Dep't of Pub. Safety v. Tex. Tribune*, No. 15-24-00010-CV, 2026 WL 628030, at *6 (Tex. App. [15th Dist.] Mar. 6, 2026,

13

no pet. h.) (quoting *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 357 (Tex. 2000)). As such, to withhold public information, the "governmental entity must demonstrate that the requested information is not within the scope of the [PIA] or that it falls within one of [PIA's] specific exceptions to the disclosures requested." *Id.* (alterations in original) (quoting *Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 291 (Tex. 2011)); *Uvalde*, 720 S.W.3d at 477 (recognizing that in a PIA case, the government has the burden to show to show the applicability of confidentiality exceptions; the requestor did not have the burden to show the "*in*applicability of any exceptions").

The TCEQ asserts that multiple exceptions are applicable here: the litigation exception, attorney-client privilege, work product privilege, and informer's privilege. But the TCEQ failed to present any evidence to prove of any of these exceptions. As the Supreme Court has explained, more than "vague assertions" by the government are needed to demonstrate the applicability of an exception. *Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 119 (Tex. 2011). "The dividing line between disclosure and restraint must be determined by proof." *Id.* Proof may consist of affidavits or declarations, or *in camera* review of the withheld documents. *Uvalde*, 720 S.W.3d at 477–78 (further explaining that while not required in Texas courts, in federal courts, federal agencies "meet their evidentiary burden" with "an itemized explanation of the documents withheld and the exceptions claimed to apply").

In this case, the TCEQ stated in its plea to the jurisdiction that it "withheld records responsive to Mr. Morrell's requests—because those records are privileged or otherwise covered by statutorily recognized exceptions to the PIA." But the TCEQ did not seek *in camera* review of the documents, nor did it submit affidavits or declarations "provid[ing] a relatively detailed justification, specifically

identif[ying] the reasons why a particular exemption is relevant, and correlat[ing] those claims with the particular part of a withheld document to which they apply." *Id.* at 478 (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009)).

Where an agency fails to submit the withheld documents for review or a detailed supporting affidavit, "there is no basis to conclude the information is wholly confidential." *Id.* at 479; *see Thomas v. Cornyn*, 71 S.W.3d 473, 489 (Tex. App.—Austin 2002, no pet.) (affirming the denial of mandamus under the PIA and noting "[t]he sheriff offered *no evidence* to prove the application of the litigation exception and failed to counter the evidence introduced by the Chronicle"); *see also Dominguez v. Gilbert*, 48 S.W.3d 789, 795 (Tex. App.—Austin 2001, no pet.). (reversing an order denying a writ of mandamus under the PIA where the withheld documents were not included in the appellate record, noting that "[o]n this record it is impossible for us to determine whether the withheld documents contain *only* confidential information pertaining to Medicaid patients"). Because the TCEQ failed to demonstrate the applicability of any exemptions, Morrell showed that the TCEQ refused to supply public information and affirmatively demonstrated the TCEQ's waiver of immunity. We affirm Morrell's challenge to the dismissal of his mandamus claim under the PIA for lack of jurisdiction.

## D. The Trial Court Properly Dismissed Morrell's Declaratory Judgment and Ultra Vires Claims With Prejudice.

In his fourth issue, Morrell asserts that the trial court erred in dismissing his declaratory judgment and ultra vires claims with prejudice. He cites to *Rusk State Hospital v. Black*, 392 S.W.3d 88, 96–97 (Tex. 2012), for the proposition that if pleadings are insufficient but do not demonstrate an incurable jurisdictional defect, a plaintiff should be afforded an opportunity to replead on remand. We agree that

"[i]n general, a dismissal with prejudice is improper when the plaintiff is capable of remedying the jurisdictional defect." *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). However, dismissal with prejudice is proper when pleadings are "incurably defective" in that they "affirmatively negate the existence of jurisdiction." *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839, 846 (Tex. 2007).

As for Morrell's ultra vires claim, as explained above, he failed to plead a viable ultra vires claim because the TCEQ officials had discretion to determine that the tires on Morrell's property were municipal solid waste. Because his pleadings were incurably defective, the trial court properly dismissed Morrell's ultra vires claim with prejudice. *See id.* As for Morrell's declaratory judgment claim, he has not alleged how he can remedy his lack of standing by repleading when the facts demonstrate that the rule he challenged was not applied to him and he has never alleged that there is a threat that it will be applied to him. *See id.* at 840 (holding that a plaintiff was not entitled to amend his pleadings where the "pleading defects cannot be cured, and he has made no suggestion as to how to cure the jurisdictional defect"). We overrule Morrell's fourth issue.

## CONCLUSION

We reverse the portion of the trial court's judgment dismissing Morrell's suit for writ of mandamus under Texas Government Code section 552.321 and remand for further proceedings consistent with this opinion. We affirm the remainder of the trial court's judgment.

/s/ April Farris
April Farris

Panel consists of Chief Justice Brister and Justices Field and Farris.

16